UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON STOLTE,<br><br>        Plaintiff,<br><br>    v.<br><br>SECURIAN LIFE INSURANCE COMPANY,<br><br>        Defendant. | Case No. 21-cv-07735-DMR<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 27 |

Plaintiff Shannon Stolte alleges that Defendant Securian Life Insurance Company violated the Employee Retirement Income Security Act ("ERISA") when it denied life insurance benefits for her now-deceased spouse, John Stolte ("J. Stolte."). Defendant moved to dismiss Plaintiff's First Amended Complaint ("FAC"). [Docket Nos. 27 ("Mot."), 31 ("Reply").] Plaintiff opposed. [Docket No. 28 ("Opp'n").] The court held a hearing on the motion on March 10, 2022. For the following reasons, the court grants Defendant's motion.

**I.   BACKGROUND**

The following facts are derived from the FAC.[1] J. Stolte participated in a health and welfare plan (the "Plan") sponsored by his employer Allstate that included life insurance coverage for eligible employees. FAC ¶¶ 2, 6. Defendant insures and administers the Plan's coverage for life insurance benefits. *Id.* ¶ 2. J. Stolte maintained $710,000 in life insurance coverage under the Plan. *Id.* ¶ 6. Plaintiff was the beneficiary of her husband's life insurance benefits. *Id.* ¶ 2.

On Friday, January 22, 2021, J. Stolte resigned from his position with Allstate. *See* FAC ¶

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

1  12. According to a subsequent internal investigation, Allstate confirmed that J. Stolte proceeded
2  to work the rest of the day. *Id.* On Monday, January 25, 2021, Allstate sent J. Stolte a "Notice to
3  Employee as to Change in Relationship" and a "Conversion/Portability Notice" (collectively, the
4  "Notices"). *Id.* ¶¶ 7, 13. The first Notice stated that J. Stolte's employment status had changed
5  due to voluntary separation on Saturday, January 23, 2021. *Id.* ¶ 13. Plaintiff alleges on
6  information and belief that her husband continued to communicate with Allstate employees after
7  January 22, 2021. *Id.* ¶ 14. J. Stolte passed away on February 24, 2021. *Id.* ¶ 9.

        The Plan provides that Defendant will pay death benefits to an insured plan participant's beneficiary if the participant dies within 31 days of the termination of group life insurance coverage, regardless of whether the participant had applied to convert his group coverage into an individual life insurance policy. FAC ¶ 8. Plaintiff submitted a claim to Defendant for life insurance benefits following her husband's death. *Id.* ¶ 9. Defendant denied Plaintiff's claim on the grounds that J. Stolte's coverage terminated on January 22, 2021, his "last day of work," and that he died outside of the 31-day window. *Id.*

        Plaintiff appealed Defendant's denial. FAC ¶ 10. She argued that J. Stolte's coverage could not have terminated earlier than January 25, 2021 because he worked a full workday on January 22 and the "Plan provides for coverage during all days one is actively at work and on the weekends." *Id.* ¶¶ 10-11. After conducting an investigation and obtaining relevant documents from Allstate, Defendant affirmed its denial of Plaintiff's claim on August 6, 2021. *Id.* ¶¶ 12-15. Defendant's denial letter informed Plaintiff that she could file a lawsuit or submit a second voluntary appeal. *Id.* ¶ 15. Plaintiff then requested all documents relevant to her claim, and Defendant provided her with a copy of its post-appeal claim file. *Id.* ¶ 16. That file contained redacted communications from Defendant's in-house legal department about her appeal. *Id.* ¶¶ 16-18. Plaintiff demanded production of the unredacted communications, but Defendant objected absent a court order. *Id.* ¶¶ 17-18.

        Plaintiff claims that Defendant's denial of life insurance benefits violated the terms of the Plan and ERISA. She alleges one claim for relief under ERISA section 502, 29 U.S.C. § 1132(a)(1)(B). She also asserts—but without making a separate claim for relief—that Defendant

United States District Court
Northern District of California

violated her right to a full and fair review under ERISA's implementing regulations, 29 C.F.R. § 2560.503-1; *see* ERISA section 503, 29 U.S.C. § 1133(2).

On October 4, 2021, Plaintiff filed her initial complaint. On November 30, 2021, Defendant moved to dismiss; Plaintiff timely filed an amended complaint on December 14, 2021, thereby terminating that motion. Defendant responded by filing the current motion.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94, and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief," *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. Fed. R. Civ. P. 15(a)(1). After that point, Rule 15(a) provides generally that leave to amend the pleadings before trial should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). However, leave to amend may be denied where the complaint "could not be saved by any amendment," i.e., "where the amendment would be futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004).

3

**B.     Judicial Review of ERISA-Covered Plans**

ERISA section 502(a) authorizes a participant in an employee benefit plan to bring a civil action to recover benefits due under the plan's terms. 29 U.S.C. § 1132(a)(1)(B). The court applies a *de novo* standard of review to actions for the recovery of ERISA benefits, unless the plan grants discretionary authority to the trustee or fiduciary. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is [entitled to benefits] under the terms of the plan." *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). The parties agree that Defendant's denial of Plaintiff's claim is subject to *de novo* review. *See* Mot. at 12; Reply at 14; Docket No. 22 at 6.

The Supreme Court has "recognized the particular importance of enforcing plan terms as written" in ERISA claims. *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 100 (2013). When reviewing an ERISA plan, the court must "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws." *Gilliam v. Nev. Power Co.*, 88 F.3d 1189, 1194 (9th Cir. 2007). "Those direct us to look to the agreement's language in context and construe each provision in a manner consistent with the whole such that none is rendered nugatory." *Dupree v. Holman Pro. Counseling Ctrs.*, 572 F.3d 1094, 1097 (9th Cir. 2009). "[T]erms in an ERISA plan should be interpreted in an ordinary and popular sense as would a person of average intelligence and experience." *Gilliam*, 488 F.3d at 1194. "[W]hen disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties. The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." *Id.*

The Ninth Circuit has explained that "[i]n interpreting the terms of an ERISA plan, we examine the plan documents as a whole and, if unambiguous, we construe them as a matter of law." *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) (quoting *Welch v. Unum Life Ins. Co. of Am.*, 382 F.3d 1078, 1082 (10th Cir. 2004)). "An ambiguity exists when the terms or words of a [benefits] plan are subject to more than one

4

1    reasonable interpretation." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1110 (9th Cir. 2000).

2    Any ambiguities "must be construed against the insurer." *Kunin v. Benefit Tr. Life Ins. Co.*, 910

3    F.2d 534, 539 (9th Cir. 1990). However, courts "will not artificially create ambiguity where none

4    exists. If a reasonable interpretation favors the insurer and any other interpretation would be

5    strained, no compulsion exists to torture or twist the language of the policy." *Dupree*, 572 F.3d at

6    1097-98. "Whether the terms of a plan are plain or ambiguous is a question of law." *McDaniel*,

7    203 F.3d at 1110. "A court may resolve contractual claims on a motion to dismiss if the terms of

8    the contract are unambiguous." *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1084 (N.D.

9    Cal. 2012).

## III.   DISCUSSION

### A.   Incorporation By Reference

Defendant submitted ten documents for incorporation by reference along with its motion, that include plan documents and letters that comprise the administrative record. *See* Mot. at 11; Declaration of Cole J. Cruz ("Cruz Decl."). Plaintiff does not oppose Defendant's request for incorporation by reference and submits additional excerpts from the administrative record, to which Defendant did not object. *See* Opp'n at 2; Declaration of Michelle L. Roberts ("Roberts Decl.") [Docket No. 29]; Reply at 4.

A district court generally may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). If "matters outside the pleading are presented to and not excluded by the court," the court must treat the motion as a Rule 56 motion for summary judgment. *See* Fed. R. Civ. P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

The incorporation by reference doctrine is "a judicially-created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). This is to prevent "plaintiffs from selecting only portions of

documents that support their claims, while omitting portions that weaken—or doom—their claims." *Id*. Incorporation by reference is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id*. at 1002 (quoting *Ritchie*, 342 F.3d at 907); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (the doctrine applies in "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint").

Exhibit A is Defendant's Employee Group Term Life Certificate of Insurance for the Policy which summarizes the principal policy provisions that are the basis for Plaintiff's claims. Cruz Decl. Ex. A ("Certificate"). Exhibit F, G and H are excerpts from the Summary Plan Description for the "Allstate Cafeteria Plan." Cruz Decl. Exs. F, G, H (collectively, "SPD").[2] The parties do not dispute the accuracy of these documents. The court incorporates the Certificate and the SPD by reference because Plaintiff extensively refers to these documents in the FAC and they form the basis of her claim.

The remaining exhibits are correspondence between the Stoltes, their counsel, Defendant, or Allstate. Plaintiff makes passing reference to these documents in the FAC, and they are largely irrelevant to resolving the legal issues in this motion. Accordingly, the court declines to incorporate by reference Exhibits B, C, D, E, I, and J to the Cruz Declaration and Exhibit 1 to the Roberts Declaration.

**B.     ERISA Section 502 Claim**

The Plan entitles Allstate employees to life insurance benefits. *See* Certificate at 6-7, 13-14; FAC ¶ 6.[3] Employees participate in a group life insurance policy. Certificate at 6-7. Once

---

[2] ERISA requires that employee benefits plans provide plan participants with an SPD, "which is the statutorily established means of informing participants of the terms of the plan and its benefits, and which serves as the employee's primary source of information regarding employment benefits." *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2009); *see* 29 U.S.C. § 1022(a).

[3] Pincites to the Certificate and SPD refer to the ECF-stamped pagination of the Cruz Declaration,

1    their employment relationship ends, they are no longer covered under the group life insurance
2    policy, but they have a right to "convert" their life insurance benefits from a group policy to an
3    individual policy. *See id.* at 16. ("Conversion Right"). To exercise this conversion right, they
4    must apply for the individual policy and pay the first premium within 31 days after their
5    employment relationship ends. *Id.* Of particular importance in this case, if a former employee
6    dies within those 31 days, their beneficiary is entitled to a "death benefit" for the insured's life
7    insurance regardless of whether the decedent completed a conversion application. *Id.* at 16.

8    The parties agree that J. Stolte was validly enrolled in Allstate's group life insurance plan.
9    *See* Mot. at 3; Opp'n at 2; FAC ¶ 2. The parties also agree that J. Stolte tendered his resignation
10   on Friday, January 22, 2021. Mot. at 3; Opp'n at 2; FAC ¶ 12. The parties further agree that J.
11   Stolte did not submit an application to convert his group policy to an individual policy after his
12   employment relationship ended but before he died on February 24, 2022. *See* Mot. at 5, 9; Opp'n
13   at 3. The fundamental question then is when did J. Stolte's life insurance coverage end? The
14   answer determines whether Plaintiff is entitled to a death benefit on J. Stolte's behalf.

15   Defendant asserts that J. Stolte's coverage ended on either Friday, January 22, 2021, the
16   date that he resigned and terminated his employment relationship with Allstate, or at the latest on
17   Saturday, January 23, 2021, the date he was deemed to have "separated" from Allstate per the
18   Notices sent by Allstate. Mot. at 3, 13 (citing FAC ¶ 13); Reply at 4.[4] Both dates fall more than
19   31 days before J. Stolte's death. Therefore, according to Defendant, Plaintiff is not entitled to any
20   death benefit under the terms of the Plan because J. Stolte died more than 31 days after his
21   employment (and therefore his life insurance coverage) ended with Allstate. Mot. at 16.

22   Plaintiff offers a different interpretation of the Plan. She asserts that even though J.
23   Stolte's last day of work was Friday, January 22, his insurance coverage carried over through the

---

not the Bates numbering used in the parties' briefing.

[4] It is undisputed that although J. Stolte sent an email of resignation on Friday, January 22, Allstate's Notice listed his date of "voluntary separation" to Saturday, January 23. FAC ¶¶ 9, 12-13; *see* Mot. at 16. At the hearing, Plaintiff's counsel acknowledged that Allstate terminated his employment on Saturday.

7

weekend until Monday, January 25, 2022. That day was exactly 31 days before J. Stolte's death. By consequence, Plaintiff argues that she is entitled to his death benefit even though he did not submit a conversion application. Plaintiff explains that the Plan "gives the employee credit for completing the full workweek"; because J. Stolte was scheduled to work on Friday, January 22, the Plan credits him for coverage purposes until Monday, January 25. Opp'n at 1, 11; *see* FAC ¶ 19. As discussed below, her reading relies on the SPD's definition of "Regular Full-Time Employee," which is "any employee of [Allstate] who is regularly scheduled to *work the full work week* in the unit to which he/she is assigned." SPD at 126 (emphasis added); *see* Opp'n at 9.

To analyze the parties' arguments, the court turns to the Plan documents which include the Certificate and the SPD.[5] *See Vaught*, 546 F.3d at 626 (requiring plan documents to be construed "as a whole"); *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002) (holding that the SPD is a "plan document and should be considered when interpreting an ERISA plan" and the plan documents). The starting point is the Plan's four eligibility requirements for group life insurance coverage:

> **Who is eligible for insurance?**
>
> You are eligible if you:
> (1) are a member of the eligible group and of an eligible class as shown on the specifications page; and
> (2) work for the employer for at least the number of hours per week shown as the minimum hours per week requirement on the specifications page; and
> (3) have satisfied the waiting period as shown on the specifications page; and
> (4) meet the actively at work requirement as shown in the section entitled "What is the actively at work requirement?"

Certificate at 14 (the "eligibility provision"). The requirements are written in the conjunctive, meaning that all four elements must be satisfied to establish eligibility. *See United States v. Lopez*, 998 F.3d 431, 436 (9th Cir. 2021) ("[W]hen the term 'and' joins a list of conditions, it requires not one or the other, but *all* of the conditions" (emphasis in original).). Once a member of the Plan no longer satisfies one of the four requirements in the eligibility provision, coverage

---

[5] As discussed below, neither party argues that the central terms "employee," "terminate," and "actively at work" are ambiguous.

terminates on that date. Certificate at 15.[6]  At issue here are the first element —namely, the date that J. Stolte was no longer a member of the eligible group for coverage purposes—and the fourth element , whether J. Stolte "actively at work" at the relevant time.

      Element 1 requires that the individual is "a member of the eligible group and of an eligible class as shown on the specifications page." Certificate at 13-14.  The Plan documents explain that a "member of the eligible group and . . . eligible class" refers to regular full-time or part-time employees. Certificate at 7; SPD at 95; *see also* FAC ¶ 6.[7]  The definition of "employee" is in the SPD, which defines "employee" as "a person in an employer-employer relationship with [Allstate] who is classified by [Allstate] as either a Regular Full-Time, Regular Part-Time, or Part-Time Employee." SPD at 126-27.[8]  Next, "[a] 'Regular Full-Time Employee' means any employee of [Allstate] who is regularly scheduled to work the full work week in the unit to which he/she is assigned." SPD at 126.

---

[6] The Plan provides:

> **When does your coverage terminate?**
>
> Your coverage ends on the earliest of the following:
>
>     (1) the date the group policy ends; or
>
>     (2) *the date you no longer meet the eligibility requirements*; or
>
>     (3) the date the group policy is amended so you are no longer eligible; or
>
>     (4) 60 days (the grace period) after the due date of any premium contribution which is not paid; or
>
>     (5) the last day for which premium contributions have been paid following your written request to cease participation under this certificate.

Certificate at 15 (emphasis added). *See also* SPD at 148 (stating that term life insurance under the Plan "[t]erminates at retirement, loss of eligibility, or termination of employment.").

[7] The Certificate Specifications Page defines an "eligible group" as "all regular full-time and part-time active employees of the policyholder . . . in the following classes: Class 1[:] Regular full-time, regular part-time, or part-time employees." Certificate at 7.  The SPD states under "Eligible Classes of Coverage" that "You are eligible to enroll in the Cafeteria Plan if You are an Employee." SPD at 95.

[8] The Certificate's definition of employee does not advance the analysis. *See* Certificate at 13 defining "employee" as "[a]n individual who is employed by the policyholder or by an associated company.").

9

"Full work week" is not defined anywhere in the Plan Documents.[9]  Plaintiff urges the court to look to Element 4 of the eligibility provision for guidance.  That element requires that the individual "meet the actively at work requirement as shown in the section entitled 'What is the actively at work requirement?'"  *See* Opp'n at 10, 12-13; FAC ¶ 10; Certificate at 14.  That section states:

> **What is the actively at work requirement?**
>
> To be eligible to be insured or to receive an increase in the amount of insurance, you must be actively at work, fully performing your customary duties for your regularly scheduled number of hours at the employer's normal place of business, or at other places the employer's business requires you to travel.
>
> [. . .]
>
> If you are not actively at work on the date coverage would otherwise begin, or on the date an increase in your amount of insurance would otherwise be effective, you will not be eligible for the coverage or increase until you return to active work.  However, if the absence is on a non-work day, coverage will not be delayed provided you were actively at work on the work day immediately preceding the non-work day.
>
> Except as otherwise provided for in this certificate, you are eligible to continue to be insured only while you remain actively at work.

Certificate at 14.  Plaintiff does not directly rely on this definition of "Actively at Work," but instead argues that it leads to another section of the SPD that is important to her theory.

The SPD explains that an employee is "Actively at Work" when "the Employee works his/her full number of hours for his/her full rate of pay for the Employer at the regular place of employment in accordance with established employment practices.  If an Employee was Actively at Work, as defined above, on his/her last working day, then he/she shall be deemed to be Actively at Work . . . on a regular non-working day."  SPD at 122.  Plaintiff interprets this provision to mean that "if one works his full number of hours for his full rate of pay on his last regular working day, then he shall be deemed to be Actively at Work on the weekend (a non-work day)."  Opp'n at 10-11.

The SPD does not define "non-working day."  However, the Certificate defines "non-work

---

[9] At the hearing, Plaintiff's counsel conceded that the phrases "full time employee" and working a "full work week" are not ambiguous.

10

day" as "[a] day on which you are not regularly scheduled to work, including . . . *weekends* . . . ." Certificate at 13 (emphasis added). Applying that definition, Plaintiff concludes that the Plan credits an employee who was "actively at work" on a Friday with insurance coverage for the following Saturday and Sunday, which are days on which the employee is not regularly scheduled to work. Therefore, the "first workday that they were no longer scheduled to work would be the following Monday," which, according to Plaintiff, is also the day that coverage terminates. Opp'n at 11. In J. Stolte's case, that day was Monday January 25, 2021, exactly 31 days before he died.

Plaintiff's interpretation is not sustainable. It conflates Element 1 of the eligibility provision ("member of eligible group") with Element 4 ("actively at work"). These elements are independent, and each one must be satisfied to establish an individual's eligibility for life insurance coverage. Once an individual no longer meets any one of the eligibility requirements, coverage terminates. *See* Certificate at 15. Element 1 is grounded in the Plan's definition of an employee as a person in an employer-employee relationship with Allstate who falls into one of three enumerated full-time or part-time classifications. Element 4 addresses whether that employee is "actively at work," which means that the employee is "fully performing [their] customary duties for [their] regularly scheduled number of hours at the employer's regular place of business …" Certificate at 14. For life insurance coverage purposes, an individual is not "actively at work" if on a leave of absence other than a military or family leave, or if not working due to illness or injury or receiving sick pay or disability benefits. Certificate at 15.[10]

Plaintiff attempts to use the "Actively at Work" and related definitions as a bootstrap to maintain J. Stolte's status as an employee over the weekend until Monday even though he terminated his employment by resigning on Friday. This is not a permissible interpretation of the Plan documents. The first and fourth elements of the eligibility provision must be independently satisfied. Under the Plan, an employee can be actively at work or not, e.g., on leave. But a person actively at work must be an employee. Plaintiff cannot leverage the "actively at work" definitions

---

[10] Although not at issue in this case, an individual's insurance coverage "may be continued on an insured employee who is not actively at work due to sickness, injury, leave of absence or temporary layoff, subject to the employer's practices and procedures[.]." Certificate at 15.

11

to revive J. Stolte's employment status following his resignation.[11]

Defendant's straightforward interpretation of the eligibility provision finds support in the SPD, which states that life insurance coverage "[t]erminates at retirement, loss of eligibility, or termination of employment." SPD at 148.[12]

Plaintiff tries to bolster her interpretation by invoking California Insurance Code section 10209 and the California Supreme Court's decision in *Walker v. Occidental Life Insurance Company*, 67 Cal. 2d 518 (1967). Section 10209 sets forth requirements for issuing notices to insured employees about their group life insurance plan conversion rights that accrue upon termination from employment.[13] In *Walker*, the California Supreme Court held that under section

---

[11] Plaintiff's argument that "by working a full day on Friday, after he sent an email informing Allstate that he has decided to resign, shows an intent by Mr. Stolte to complete his regularly scheduled workweek," Opp'n at 10, is not persuasive because the FAC does not allege anything about J. Stolte's intent. The court will not speculate about J. Stolte's unstated intent if it is not plausibly alleged. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."). In any event, taking this argument into account does not change the outcome.

[12] Plaintiff makes the conclusory assertion that "[t]erminates at retirement, loss of eligibility or termination of employment" is ambiguous and should be read to mean "in connection with or at about the time of termination of employment." Opp'n at 10. Plaintiff does not explain why the Plan supports this reading or how she connects it to the Plan's eligibility requirements. She also does not apply the legal rubric to evaluate ambiguity. Plaintiff's proffered case, *Barnes v. AT&T Pension Benefit Plan—Nonbargained Program*, No. C-08-405-EMC, 2012 WL 1657054 (N.D. Cal. 2012), is not helpful because it involved interpretation of different plan documents.

[13] Section 10209(a) requires insurers to issue an individual certificate to the insured employee that sets forth:

> (2) A provision that if the employment terminates for any reason whatsoever and the employee applies to the insurer within 31 days after the termination, paying the premium applicable to the class of risk to which he or she belongs and to the form and amount of the policy at his or her then attained age, he or she is entitled, without producing evidence of insurability, to the issue by the insurer of any individual life policy in any one of the forms, other than term insurance, customarily issued by the insurer.
>
> [. . .]
>
> (4) A provision that if the employee dies during the 31-day period within which he or she is entitled to have an individual policy issued to him or her in accordance with this section and before the policy shall have become effective, the amount of life insurance that the employee is entitled to have issued to him or her under the individual

12

1    10209, an employer must issue a timely notice of termination and notice of an employee's

2    conversion rights "within 31 days after termination of employment." *Walker*, 67 Cal. 2d at 523-

3    24; *see also Preaseau v. Prudential Ins. Co. of Am.*, 591 F.2d 74, 82 (1979) (recognizing that in

4    *Walker*, "the California Supreme Court concluded that the 31 day option period could not begin

5    running until the employee was sufficiently notified of his final termination").

6        Plaintiff argues that "*Walker* applies to the present case because it dictates the earliest date

7    from when the 31-day [conversion] period can run." Opp'n at 18. She explains that "Allstate did

8    not give Mr. Stolte notice of his termination of employment until Monday January 25, 2021, and

9    under California law, the 31-day conversion period cannot start until that date." *Id.* at 15.

10       It is not clear how section 10209 and *Walker* apply here. Section 10209 addresses an

11   insurer's notice of conversion rights. No one disputes that Allstate issued its Notices on January

12   25, 2021, which was well within 31 days of J. Stolte's termination as required by section 10209.

13   Plaintiff does not challenge the content or timeliness of the Notices. Rather, Plaintiff challenges

14   Defendant's denial of death benefits, and as the Ninth Circuit has explained, section 10209's

15   provision about an employee dying within 31 days of the termination of coverage "was not even

16   an issue in *Walker*." *Preaseau*, 591 F.2d at 83; *see* Cal. Ins. Code § 10209(a)(4). Furthermore,

17   section 10209's "extension of the time limit for conversion does not in itself provide an extension

18   of the entitlement for benefits." *Preaseu*, 591 F.2d at 81. *See also Daniels v. Equitable Life Ins.

19   Soc.*, 123 Cal. App. 3d 467, 472 (1981) (affirming denial of death benefits and holding that

20   "[b]ecause Daniels' death occurred beyond the 31-day period . . . any failure to give Daniels

---

> policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.

Cal. Ins. Code § 10209(a)(2), (4). Furthermore:

> If any employee insured under a group life insurance policy delivered in this state becomes entitled under the terms of the policy to have an individual policy of life insurance issued . . . , and if the employee is not given notice of the existence of the right at least 15 days prior to the expiration date of the period, the employee shall have an additional period within which to exercise the right, but nothing in this section shall be construed to continue any insurance beyond the period provided in the policy. . . .

Cal. Ins. Code § 10209(b).

notice at the time of his termination that had he [*sic*] a right to convert his group life insurance to an individual life policy would have resulted only in an extension of time within which to apply for conversion; it would not have extended his insurance coverage").[14]

More to the point, Plaintiff's proffered reading of *Walker* contravenes the plain language of the Plan. Her interpretation would require the 31-day clock for conversion rights to start once Allstate issues its Notices. The Plan, however, expressly provides that an employee may convert their insurance "within 31 days after the date [their] group insurance terminates," not after the date the Notices are issued. Certificate at 16. Plaintiff does not explain this contradiction. *See also Henkin*, 921 F.2d at 868-69 (denying claim for death benefit related to accidental death policy where the insured was no "longer a member of the eligible class" after he was fired in late April, coverage ceased at the end of April, he received notice of his termination in early May, and died later that month, because "[t]here is nothing in the contract that would extend his full-time employee status [for coverage purposes] until he received notice of his termination.").

Construing the Plan documents according to their plain meaning and taking the FAC's factual allegations as true, J. Stolte's employment relationship with Allstate ended by no later than Saturday, January 23, 2021. Although this is the day after he resigned, Allstate's Notices listed January 23, 2021 as the date that J. Stolte's employment status changed due to voluntary separation. Accordingly, as of January 23, 2021, he was no longer an employee and thus did not meet Element 1 of the Plan's eligibility provision, meaning that his eligibility for group insurance benefits terminated. He then had 31 days to convert his group policy to an individual policy, but he did not do so. He died more than 31 days after his eligibility for insurance coverage terminated. For these reasons, Plaintiff is not entitled to a death benefit. As harsh and unlucky as this result may be, no plausible reading of the FAC and Plan documents can support a different result. Defendant's denial of Plaintiff's death benefit claim was proper.

---

[14] Plaintiff avers that the California Insurance Code is not preempted by ERISA, Opp'n at 17-18. As Defendant never raised this argument, the court need not address it. The court notes, however, that the Ninth Circuit has unequivocally found that "[Insurance Code section] 10209 is a state law 'regulating insurance' and hence is saved from ERISA preemption." *Henkin v. Northrop Corp.*, 921 F.2d 854, 867 (9th Cir. 1990).

Plaintiff requests leave to amend should the court grant Defendant's motion. Opp'n at 20. The court, however, concludes that the section 502 claim cannot be saved by any amendment. *See Thinket*, 368 F.3d at 1061. The court's ruling relies on the undisputed text of the Plan documents. No new factual allegations could change this analysis unless Plaintiff can plausibly claim that J. Stolte's termination was on Monday, January 25, 2021. Although the complaint alleges on information and belief that J. Stolte communicated with Allstate after January 22, 2021, *see* FAC ¶ 14, at the hearing, Plaintiff's counsel conceded that his employment terminated on Saturday, January 23, 2021. Any allegations that Allstate continued to employ J. Stolte through the weekend would contradict Plaintiff's statements and, according to Defendant's counsel at the hearing, would conflict with evidence in the record. Because no new allegations could change the outcome in this case, the court finds that amendment is futile and denies leave to amend her section 502 claim.

### C. ERISA Section 503 Claim

The FAC briefly alleges—although not as a separate claim for relief—that Defendant violated Plaintiff's right to a full and fair review under ERISA's implementing regulations, C.F.R. § 2560.503-1, when it refused to produce the entire claim file, including certain unredacted documents from its legal counsel. FAC ¶ 19. Plaintiff acknowledges that she "did not state these allegations as a separate cause of action" but nevertheless intimates that "a cause of action based on violations of ERISA § 503 may be sustained against Securian." Opp'n at 19. She suggests that should the court "find[] that undeveloped issues of fact that are necessary to decide Plaintiff's entitlement to benefits" and "depending on the Court's decision on Securian's motion," she may seek leave to allege a claim for relief for a procedural violation of ERISA. *Id.* at 19-20. Securian disagrees and moves to dismiss this allegation, stating that Plaintiff was afforded a full and fair review under the Plan. Mot. at 21-22; Reply at 12-14.

ERISA Section 503 requires that every employee benefit plan shall "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review." 29 U.S.C. § 1133(2); *see* 29 C.F.R. § 2560.503-1 (setting forth "minimum requirements for employee benefit plan procedures pertaining to claims for benefits"). An ERISA plaintiff may

15

allege a section 503 violation based on an underlying substantive violation under ERISA section 502. *See Bush v. Liberty Life Assurance Co. of Bost.*, 77 F. Supp. 3d 900, 909-10 (N.D. Cal. 2015). Section 503 does not create a separate private right of action for damages. *Sobh v. Phoenix Graphix Inc.*, No. CV-18-04073-PHX-DWL, 2019 WL 3973697, at *4 (D. Ariz. Aug. 22, 2019); *see also Love v. Dell, Inc.*, 551 F.3d 333, 338 (5th Cir. 2008) ("Violations of ERISA's procedural requirements—failures to provide 'full and fair review' and to engage in meaningful dialogue—do not usually lead to a claim for damages"). Rather, "the usual remedy for a violation of § 1133 is 'to remand to the plan administrator so the claimant gets the benefit of a full and fair review.'" *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1035 (9th Cir. 2006) (quoting *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000)); *see, e.g.*, *Freitas v. Geisinger Health Plan*, 542 F. Supp. 3d 283, 314-25 (M.D. Pa. 2021) (declining to dismiss ERISA section 503 because a claim to "request a remand for a full and fair review of their benefits claim" likely may be sustained).

Plaintiff admits she did not state a standalone section 503 claim but acknowledges that she "may" have a claim based on this court's decision on her substantive section 502 claim. In light of Plaintiff's admission that she has not stated a claim, the court grants Defendant's motion to dismiss. However, Plaintiff is granted leave to amend to add factual allegations to support a viable section 503 claim if she so chooses. [15]

## IV. CONCLUSION

For the foregoing reasons, the motion to dismiss the FAC is granted. Because no amendment of the section 502 claim could result in a cognizable claim for benefits under the Plan or to remedy procedural violations, the court finds that amendment would be futile and dismisses

---

[15] The parties also filed a joint discovery letter seeking to compel disclosure of certain privileged, redacted material in the administrative record. [Docket No. 32.] Discovery must be relevant to party's claims and defenses. Fed. R. Civ. P. 26(b)(1). As Plaintiff conceded that she did not state a section 503 claim, the court finds that the joint discovery letter is not ripe for resolution and denies it as moot without prejudice. If Plaintiff chooses to file an amended complaint for a section 503 claim and further disputes remain, the parties may thereafter file a renewed standalone joint discovery letter that does not incorporate any other material by reference.

16

the section 502 claim with prejudice.  However, Plaintiff may file an amended complaint that states an ERISA section 503 claim if she chooses.  Any amended complaint is due by September 6, 2022.  If Plaintiff does not file an amended complaint by that date, judgment will be entered consistent with this order and the case will be closed.

**IT IS SO ORDERED.**

Dated: August 15, 2022



Donna M. Ryu
United States Magistrate Judge

17